Antonio D. WATSON; Tony Tix, Inc.; Gerald W. Kelly; Just Jerry's, Inc. t/a and d/b/a Scoreboard Restaurant & Tavern; Robert Kennedy

v.

ABINGTON TOWNSHIP; Abington Township Police Department; Chief William J. Kelly, Individually and in his official cap city as a Police Chief, Abington Township Police Department; Detective Richard L. Kondon, Badge No.1981, Individually and in his official capacity as a police officer, Abington Township Police Department; Detective John Parks, Badge No.0092, Individually and in his official capacity as a police officer, Abington Township Police Department; Detective Anthony Ammaturo, Badge No. 1556, Individually and in his official capacity as a police officer, Abington Township Police Department

Gerald W. Kelly; Just Jerry's, Inc. t/a and d/b/a Scoreboard Restaurant and Tavern, Appellants.

Antonio D. Watson; Tony Tix, Inc.; Gerald W. Kelly; Just Jerry's, Inc. t/a and d/b/a Scoreboard Restaurant & Tavern; Robert Kennedy

v.

Abington Township; Abington Township Police Department; Chief William J. Kelly, Individually and in his official cap city as a Police Chief, Abington Township Police Department; Detective Richard L. Kondon, Badge No.1981, Individually and in his official capacity as a police officer, Abington Township Police Department; Detective John Parks, Badge No.0092, Individually and in his official capacity as a police officer, Abington Township Police Department; Detective Anthony Ammaturo, Badge No. 1556, Individually and in his official capacity as a police officer, Abington Township Police Department, Appellants.

Nos. 08–3712, 08–3845.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) May 29, 2009.

Filed: July 15, 2009.

D. Louis Nicholson, Esq., Philadelphia, PA, for Antonio D. WATSON, Tony Tix, Inc., Gerald W. Kelly, Just Jerry's, Inc. t/a and d/b/a Scoreboard Restaurant & Tavern, Robert Kennedy.

Walter F. Kawalec, III, Esq., Marshall, Dennehey, Warner, Coleman & Goggin, Cherry Hill, NJ, for Appellants.

BEFORE: FISHER, CHAGARES and COWEN, Circuit Judges.

## OPINION

COWEN, Circuit Judge.

We are confronted with cross-appeals filed, respectively, by Plaintiffs Gerald W. Kelly and his business Just Jerry's, Inc. ("Just Jerry's") (collectively "Plaintiffs") as well as Defendants Abington Township, the Abington Township Police Department, Police Chief William J. Kelly, and three individual police officers (collectively "Defendants"). The parties seek relief from a decision of the United States District Court for the Eastern District of Pennsylvania disposing of their respective motions for summary judgment. For the following reasons, we will affirm.

### I.

In 1993, Gerald Kelly[1] retired from the Abington Township Police Department as a Lieutenant, and he purchased the Scoreboard Restaurant and Tavern ("Scoreboard"). The restaurant was set up under the corporate entity Just Jerry's. In 1998, Kelly leased an adjacent storefront to An-

---

1. Plaintiff Kelly is not related to Defendant Chief Kelly.

tonio Watson, an African–American.[2] Watson used the property to operate a ticket agency named Tony Tix, Inc. Filing suit under 42 U.S.C. § 1983, Plaintiffs claimed, inter alia, that Defendants violated the Fourth and Fourteenth Amendments.

This case has already been before this Court in a prior appeal. The District Court initially granted Defendants' motion to dismiss the Fourth Amendment claim pursuant to the closely regulated industry exception to the warrant requirement. After denying Plaintiffs' reconsideration motion, the District Court granted Defendants' motion for summary judgment as to the Fourteenth Amendment claim, finding that there was insufficient evidence of a municipal policy or custom of racial discrimination. On appeal, we affirmed the District Court's summary judgment ruling with respect to the Fourteenth Amendment claim but reversed its dismissal of the Fourth Amendment claim. *See Watson v. Abington Twp.*, 478 F.3d 144, 147, 150–57 (3d Cir.2007).

For the purposes of this current appeal, we limit our factual discussion to the remaining Fourth Amendment claim. Simply put, Plaintiffs have alleged that the Abington Township police conducted several warrantless sweeps of the Scoreboard for underage drinking in an attempt to drive Kelly out of business because of his relationship with Watson and his plans to sell the Scoreboard to Watson. Abington Township funded its program to sweep several bars and restaurants in the community with money obtained through a Pennsylvania Commission on Crime and Delinquency ("PCCD") grant. The sweeps were themselves planned by, and conducted at the direction of, Abington Township

Police Department Lieutenant Peter Hasson.[3] On the other hand, Chief Kelly signed the PCCD grant application and was a member of the related community task force.

The police never obtained a warrant for the sweeps. The Scoreboard, along with several other establishments, was targeted on May 20, 1999, December 18, 1999, August 3, 2000, and November 25, 2000. A number of uniformed officers entered the establishment, with one officer securing the door while the others checked the patrons' identification. According to his deposition testimony, Chief Kelly was present at the Scoreboard during (or immediately after) one of the sweeps, responding to a call for assistance to handle and transport a large number of arrested underage drinkers. He remained outside the Scoreboard and never entered the establishment itself. In July 2001, the Scoreboard closed.

On July 31, 2008, the District Court granted in part and denied in part the parties' respective summary judgment motions as follows: (1) granted Plaintiffs' motion and denied Defendants' motion with respect to the Fourth Amendment claim against Abington Township because the sweeps, conducted without any warrant, constituted seizures of property not falling within an established exception to the warrant requirement; (2) denied Plaintiffs' motion as to all other Defendants; (3) granted Defendants' motion as it pertains to Plaintiffs' claims pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and dismissed such claims with prejudice; (4) granted Defendants' motion as to the individual Defendants on qualified immunity grounds; and (5) denied Defendants'

---

**2.** Originally a Plaintiff in this case, Watson died in 2004.

**3.** Lieutenant Hasson had allegedly threatened Kelly about his relationship with Watson.

motion as to all other claims. Simply put, the District Court reached this rather complex result based on its underlying determination that, while "Plaintiff has asserted a valid Fourth Amendment claim, ... the Defendants cannot be held liable for the violation." *Watson v. Abington Twp.*, No. 01–5501, 2008 WL 2954600, at *8 (E.D.Pa. July 31, 2008).

Plaintiffs filed a timely notice of appeal. Likewise, Defendants filed a protective cross-appeal. In addition to defending the District Court's ultimate ruling in their favor, Defendants alternatively argue the District Court was incorrect to find the existence of a Fourth Amendment violation in the first place.

## II.

The District Court possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and appellate jurisdiction exists under 28 U.S.C. § 1291. We exercise plenary review over the District Court's summary judgment ruling and apply the same legal standard that the District Court should apply. *See, e.g., Curley v. Klem,* 298 F.3d 271, 276 (3d Cir.2002). We therefore may affirm an order granting summary judgment if it appears that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

■ Our analysis begins with the issue of Chief Kelly's involvement in the unconstitutional conduct.[4] It is well established that an individual defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*" *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (citation omitted). Such involvement exists where the defendant personally directed the wrongdoing or otherwise knew about and acquiesced in the misconduct. *Id.* Plaintiffs contend that the District Court erred by failing to grant summary judgment in their favor on the grounds that Chief Kelly was personally liable for the Fourth Amendment violation because he was physically present during at least one of the unconstitutional sweeps. In addition, they claim that "he also was the top ranking commander of the Abington Township police between 1990 and 2001 and therefore directed his subordinate officers to violate Appellants' Fourth Amendment rights." (Plaintiffs' Br. at 17 (citing A48).) Plaintiffs further point to the small size of the Abington Township Police Department and the alleged close proximity between the Scoreboard and police headquarters, going so far as to claim that Chief Kelly must have known about the unconstitutional activities of his subordinates. Nevertheless, we agree with Defendants that the record clearly indicates that Chief Kelly did not personally direct the sweeps and also did not know of, and acquiesce in, the purportedly unconstitutional conduct.

It appears undisputed that, although Chief Kelly may have signed the PCCD grant application (and was evidently one of many members on the related community

---

4. Because we dispose of this appeal on other grounds, we assume arguendo that the District Court was correct to find the existence of a Fourth Amendment violation in the present circumstances and accordingly do not reach the issues raised in Defendants' cross-appeal.

The District Court further concluded that the three other individual Defendants were entitled to qualified immunity. Plaintiffs, however, do not appear to challenge this determination on appeal, limiting their entire discussion to Chief Kelly. We therefore find that any challenge to the District Court's ruling with respect to the other individual Defendants in this case has been waived. *See, e.g., United States v. Pelullo,* 399 F.3d 197, 222 (3d Cir.2005).

task force), he played no role in actually designing and then implementing the specific sweep program. Contrary to Plaintiffs' characterization, there is no evidence indicating that he "directed" the officers to violate Plaintiffs' constitutional rights. It is clear that the program itself was designed and then run by Lieutenant Hasson, who was never named as a defendant in this litigation. In turn, Chief Kelly did not really participate in the various Scoreboard sweeps. For instance, he was not among the officers who actually executed the sweeps by entering the establishment and checking identification for underage patrons. He was called to the scene on one occasion to assist in handling several underage drinkers arrested as a result of the sweep. But he unambiguously testified at his deposition that he never entered the Scoreboard itself. In the end, Plaintiffs appear to offer nothing but speculation based on such varied considerations as rank, the size of the Abington Township Police Department, and even the proximity between police headquarters and the establishment at issue.

We must reach the same basic conclusion with respect to Plaintiffs' *Monell* claims against Abington Township (and the Abington Township Police Department). As stated in our earlier ruling, the Supreme Court held that municipal liability under § 1983 "only attaches when the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Watson,* 478 F.3d at 155 (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018; *Bielevicz v. Dubinon,* 915 F.2d 845, 850 (3d Cir.1990)). On appeal, Plaintiffs rely on the Supreme Court's ruling in *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), to assert that a single decision or action by a policymaker could satisfy the "policy or custom"

requirement for municipal liability. It is true that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480, 106 S.Ct. 1292. It also appears uncontested that Chief Kelly was a municipal policymaker. Nevertheless, Defendants are still entitled to summary judgment on *Monell* grounds because of the absence of a genuine issue of material fact with respect to whether Chief Kelly ever committed the requisite action necessary to hold the municipality liable for the unconstitutional conduct of its lower-ranking employees.

As already noted, Plaintiffs emphasize that Chief Kelly was the commander of the Abington Township Police Department and that he signed the PCCD application for the grant to fund the sweep program. They likewise continue to claim that he knew and acquiesced in the unconstitutional conduct of his subordinates. *See, e.g., Watson,* 478 F.3d at 156 ("In other words, custom may be established by proving knowledge of, and acquiescence to, a practice." (citation omitted)). Nevertheless, we have already found the absence of a factual dispute with respect to whether Chief Kelly had any real involvement in either the planning or execution of the sweep program. We likewise have rejected Plaintiffs' assertions with respect to Chief Kelly's alleged knowledge and acquiescence. In particular, there is no indication that Chief Kelly had any real connection with the purportedly unconstitutional search and seizure practices identified by the District Court.

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.